# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| People for the Ethical Treatment of<br>Animals, Inc.,<br>    1536 16th Street, N.W.<br>    Washington, D.C. 20036<br><br>        Plaintiff,<br>          v.<br><br>United States Department of Agriculture<br>and Thomas Vilsack, in his official<br>capacity as Secretary of the United States<br>Department of Agriculture,<br>    1400 Independence Avenue, S.W.<br>    Washington, D.C. 20250<br><br>        Defendants. | Case No.: 13-cv-976 (JEB) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
## PLAINTIFF'S MOTION FOR PARTIAL RECONSIDERATION OF DISMISSAL

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................................................iii

INTRODUCTION ....................................................................................................................1

BACKGROUND.......................................................................................................................2

LEGAL STANDARDS .............................................................................................................4

    I.       Reconsideration Standard.................................................................................4

    II.      Motion to Dismiss Standard .............................................................................5

ARGUMENT..........................................................................................................................6

    I.       The Existence of a Policy Is a Factual Allegation Entitled to a Presumption of Veracity,

    and Not a Legal Conclusion.................................................................................8

    II.      Proof of the Alleged Policy Is Not Required at the Motion to Dismiss Stage, Before

    Discovery, but Only Later in the Litigation.................................................................9

    III.    The Court Improperly Credited Defendants' Assertions Regarding Its Policies .............13

    IV.    If the Court Nevertheless Concludes That More Detailed Allegations  Are Required,

    Plaintiff Respectfully Requests Leave to Amend ........................................................14

CONCLUSION.......................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

Adams v. Richardson, 351 F. Supp. 636 (D.D.C. 1972)......................................................13

Adams v. Richardson, 480 F.2d 1159 (D.C. Cir. 1973)................................................2, 9, 14, 15

Andresen v. Int'l Paper Co., No. 13-2079 WL 4013120 (C.D. Cal. Aug. 5, 2013).....................10

Anyanwutaku v. Moore, 151 F.3d 1053 (D.C. Cir. 1998) ......................................................5

Ashcroft v. Iqbal, 556 U.S. 662 (2009)............................................................................7, 9

Ass'n of Am. Med. Coll. v.  Princeton Review, 332 F. Supp. 2d 11 (D.D.C. 2004) ...................8

Auto Safety, Inc. v. Nat'l Hwy. Traffic Safety Admin., 342 F. Supp. 2d 1 (D.D.C. 2004)..........12

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).................................................................6

Bernhardt v. Los Angeles County, 339 F.3d 920 (9th Cir. 2003)............................................10

Campbell v. District of Columbia, No. 12-1769, --- F.Supp.2d ---, 2013 WL 5306641 (D.D.C. Sept. 23, 2013) ..................................................................................................5

City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687 (1999).........................9

Convertino v. U.S. Dept. of Justice, 684 F.3d 93 (D.C. Cir. 2012) .......................................20

Crowley Caribbean Transport, Inc. v. Peña, 37 F.3d 671 (D.C. Cir. 1994)............................12

Dixon v. Midland Mortg. Co., 719 F. Supp. 2d 53 (D.D.C. 2010) ..........................................8

Edison Elec. Instit. v. EPA, 996 F.2d 326 (D.C. Cir. 1993) .................................................12

Firestone v. Firestone, 76 F.3d 1205 (D.C. Cir. 1996) .........................................................5

Graham v. Adams, 640 F. Supp. 535 (D.D.C. 1986) ......................................................11, 13

Haase v. Sessions, 835 F.2d 902 (D.C. Cir. 1987)..............................................................11

Haines v. Gen. Pension Plan of Int'l Union of Operating Eng'rs, No. 12-1870, --- F.Supp.2d ---, 2013 WL 4736228 (D.D.C. Sept. 4, 2013) ..........................................................................7

Heckler v. Chaney, 470 U.S. 821 (1985)..........................................................................14

In re Polyurethane Foam Antitrust Lit., 799 F. Supp. 2d 777 (N.D. Ohio 2011) .....................10

Jefferson v. Collins, 905 F. Supp. 2d 269 (D.D.C. 2012).................................................7, 13

Jordan by Jordan v. Jackson, 15 F.3d 333 (4th Cir. 1994)...................................................11

Lee v. City of Los Angeles, 250 F.3d 668 (9th Cir. 2001) ...................................................17

Leftwich v. Gallaudet Univ., 878 F. Supp.2d 81 (D.D.C. 2012) .............................................6

Midwestern Gas Transmission Co. v. FERC, 589 F.2d 603 (D.C. Cir. 1978).............................9

Nat'l Wildlife Fed'n v. EPA, 980 F.2d 765 (D.C. Cir. 1992).................................................12

Navab-Safavi v. Glassman, 637 F.3d 311 (D.C. Cir. 2011) .................................................17

OSG Bulk Ships, Inc. v. United States, 132 F.3d 808 (D.C. Cir. 1998) .................................12

Pleasants v. Allbaugh, 185 F. Supp. 2d 69 (D.D.C. 2002) ..................................................10

Roane v. Holder, 607 F. Supp. 2d 216 (D.D.C. 2009);........................................................14

Turkmani v. Republic of Bolivia, 273 F. Supp. 2d 45 (D.D.C. 2002) ......................................5

Ware v. Nicklin Associates, Inc., 580 F. Supp. 2d 158 (D.D.C. 2008) ....................................8

Woodford v. Cmty. Action Agency, 239 F.3d 517 (2d Cir. 2001) ...........................................8

**Statutes & Regulations**

7 U.S.C. §§ 2131-2159 ................................................................................................. 3

9 C.F.R §§ 3.125 – 3.142 ............................................................................................. 4

**Rules**

Fed. R. Civ. P. 15(a) ................................................................................................. 15

Fed. R. Civ. P. 56(d) ................................................................................................. 16

Fed. R. Civ. P. 59(e) ................................................................................................... 5

## **INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 59(e), Plaintiff, People for the Ethical Treatment of Animals, Inc. (PETA), respectfully requests that the Court reconsider one aspect of its December 16, 2013, opinion granting Defendants' Motion to Dismiss. (DE 19; hereinafter Mem. Op.) Specifically, Plaintiff respectfully asks the Court to reconsider the dismissal of Plaintiff's first claim for relief, which challenges "[t]he USDA's [U.S. Department of Agriculture] total failure to inspect or investigate potential violations of the AWA [Animal Welfare Act] pertaining to birds, or to enforce any aspect of the AWA with respect to birds— including even under the general AWA standards that apply to all AWA-covered animals," Compl. (DE 1) ¶ 25, despite Congress's amendment of the Animal Welfare Act more than eleven and a half years ago to include birds within the ambit of the AWA's protection, see id. ¶ 12. Plaintiff's counsel has conferred with Defendants' counsel, who indicates that Defendants will oppose this motion.

The Court dismissed Plaintiff's first claim as non-reviewable under the Administrative Procedure Act (APA) because Plaintiff "alleges without proof that [the USDA] has a general policy of non-enforcement." Mem. Op. at 16-17. In so doing, Plaintiff respectfully submits, the Court did not apply the appropriate standard of review for a motion to dismiss, which the Court recognized requires that it "treat the complaint's factual allegations as true" and construe the allegations of the complaint favorably to Plaintiff. Mem. Op. at 5. Instead, the Court applied a heightened standard of review and credited the USDA's denial of such a policy. In addition, requiring that, to be reviewable, a non-enforcement policy must be "formally expressed . . . through some kind of official pronouncement" that is "concrete," Mem. Op. at 15, conflicts with precedent. See Adams v. Richardson, 480 F.2d 1159, 1164 (D.C. Cir. 1973) (en banc) (per

curiam) (affirming judgment for plaintiff in challenge to a non-enforcement policy where the evidence of said policy was the fact that the agency "ha[d] neither instituted any enforcement proceedings itself nor referred any of the cases to the Department of Justice").

For these reasons, the dismissal of Plaintiff's first claim constitutes "clear error," warranting reconsideration.

## BACKGROUND

The AWA, 7 U.S.C. §§ 2131-2159, is designed "to insure that animals intended for use in research facilities or for exhibition purposes or for use as pets are provided humane care and treatment" and "to assure the humane treatment of animals during transportation in commerce." Id. § 2131. These purposes are effectuated through a licensing regime, routine inspections, and the application of regulatory welfare standards. See id. §§ 2134, 2143; 9 C.F.R. §§ 2.1, 2.3.

Eleven years and seven months ago, see Compl. ¶ 12, "Congress amended the Animal Welfare Act to include birds as creatures deserving of legal protection." Mem. Op. at 1. More than a decade later, however, the USDA, which is charged with implementing the AWA, has, at a minimum, wholly failed to implement the Act with regard to birds, leaving, according to the agency itself, approximately 5,000 facilities that should be licensed and inspected under the Act with no regulatory oversight, see Mem. in Support of Mot. to Dismiss (DE 8-1) at 27. At these facilities—and at facilities where other AWA-covered species, but not birds, are regulated by the USDA—untold thousands of birds are used for regulated purposes, including exhibition and breeding—and untold numbers of birds are suffering in contravention of the AWA, see, e.g., Mem. Op. at 4 (noting two of numerous documented such incidents—birds fatally attacked by dogs, and hundreds of birds allowed to die from starvation and disease).

The USDA's failure to implement Congress's 2002 amendment to protect birds under the AWA is two-fold: First, it has "not enforce[d] the Act against bird abusers," maintaining that it cannot do so until it determines what standards are appropriate for birds—despite the existence of general standards intended to apply to <u>all</u> covered animals for whom there are not specific standards, <u>see</u> Mem. Op. at 1, 3; Compl. ¶¶ 11, 15, 19, 20, 22; <u>see also</u> 9 C.F.R §§ 3.125 – 3.142 ("Specifications for the Humane Handling, Care, Treatment, and Transportation of Warmblooded Animals Other Than Dogs, Cats, Rabbits, Hamsters, Guinea Pigs, Nonhuman Primates, and Marine Mammals"). Second, and relatedly, the USDA has not promulgated bird-specific welfare standards, despite first indicating its intent to do so nine and a half years ago, and despite repeatedly reiterating that intent over the subsequent years. <u>See</u> Compl. ¶¶ 14-16; Mem. Op. at 3, 19. These two factors—the agency's refusal to apply the Act to birds until it has specific standards, and the agency's ongoing failure to promulgate such standards—have left birds without the protections Congress intended for them to have more than a decade ago.

Plaintiff brought suit challenging both of these failings, each in a separate claim. <u>See</u> Compl. ¶¶ 23-26, 27-30. Defendants filed a motion to dismiss,[1] which the Court granted.  Mem. Op. at 21.

At issue here is the Court's dismissal of Plaintiff's first claim, which challenges "[t]he USDA's total failure to inspect or investigate potential violations of the AWA pertaining to birds, or to enforce any aspect of the AWA with respect to birds—including even under the general AWA standards that apply to all AWA-covered animals." Compl. (DE 1) ¶ 25. In support of this claim, Plaintiff alleges that the "[t]he USDA has consciously and expressly

---

[1]With regard to Plaintiff's second claim only, which is not at issue here, Defendants also sought, in the alternative, summary judgment.  <u>See</u> Mem. in Support of Mot. to Dismiss (DE 8-1) at 30 ("[T]o the extent that the Court considers the reasonableness of the time it has taken USDA to determine the manner in which to regulate the treatment of birds covered by the AWA, USDA is entitled to summary judgment."). The Court, however, resolved both claims pursuant to Rule 12(b)(6). Mem. Op. at 21.

adopted a general policy of not enforcing the AWA with regard to birds," has "refus[ed] to apply

the broad, general standards" to birds,  and "has categorically refused to extend enforcement of

the AWA to birds." Compl. (DE 1) ¶¶ 20, 21, 22 (emphasis added). Despite the mandate that, in

deciding a motion to dismiss, "the Court must 'treat the complaint's factual allegations as true,'"

Mem. Op. at 5 (quoting Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir.

2000)) (additional citations omitted), and that "the allegations of the complaint should be

construed favorably to the pleader,'" id. (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)),

the Court dismissed this claim because Plaintiff "alleges without proof that [the USDA] has a

general policy of non-enforcement," Mem. Op. at 16-17.

## LEGAL STANDARDS

### I.      Reconsideration Standard

Pursuant to Fed. R. Civ. P. 59(e), a district court may grant a motion for reconsideration

if it finds that there is an "intervening change of controlling law, the availability of new

evidence, or the need to correct a clear error or prevent manifest injustice." Firestone v.

Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam) (citation omitted) (internal quotation

marks omitted). District courts have discretion in ruling on motions for reconsideration, id., and

the court can and should correct clear errors in order to "ensure the integrity of the final

judgment," Turkmani v. Republic of Bolivia, 273 F. Supp. 2d 45, 50 (D.D.C. 2002). See also

Anyanwutaku v. Moore, 151 F.3d 1053, 1058-59 (D.C. Cir. 1998) ("Even if [plaintiff] might

lose on the merits, we think the district court should have permitted his claim, . . . based on

legitimate factual allegations, to proceed. Accordingly, the district court's refusal to reconsider its

. . . dismissal of [plaintiff's] . . . claim amounted to an abuse of discretion.").

II.     **Motion to Dismiss Standard**

"The Federal Rules of Civil Procedure require that a complaint contain 'a short and plain statement of the claim' in order to give the defendant fair notice of the claim and the grounds upon which it rests." Campbell v. District of Columbia, No. 12-1769, --- F.Supp.2d ---, 2013 WL 5306641, at *3 (D.D.C. Sept. 23, 2013) (quoting Fed. R. Civ. P. 8(a)(2)) (citing Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam)). "A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim." Id. (citing Scheuer, 416 U.S. at 236). "It is not necessary for the plaintiff to plead all elements of her prima facie case in the complaint." Id. (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511–14 (2002)) (additional citation omitted).

As noted in the Court's Opinion, in deciding a motion to dismiss "the Court must 'treat the complaint's factual allegations as true,'" Mem. Op. at 5 (quoting Sparrow, 216 F.3d at 1113) (additional citations omitted), and "the allegations of the complaint should be construed favorably to the pleader,'" id. (quoting Scheuer, 416 U.S. at 236); see also Leftwich v. Gallaudet Univ., 878 F. Supp.2d 81, 90 (D.D.C. 2012) ("Ambiguities must be resolved in favor of Plaintiff, giving him the benefit of every reasonable inference drawn from the well-pleaded facts and allegations in the complaint." (citation omitted)).

Accordingly, "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007) (citation omitted)).

In other words:

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial

> plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556-57, 570); accord Mem. Op. at 6. Under this standard, "[a] court must treat the complaint's factual allegations as true, 'even if doubtful in fact.'" Haines v. Gen. Pension Plan of Int't Union of Operating Eng'rs, No. 12-1870, --- F.Supp.2d ---, 2013 WL 4736228, at *2 (D.D.C. Sept. 4, 2013) (quoting Twombly, 550 U.S. at 555). Moreover, this standard "does not prevent a plaintiff from 'pleading facts alleged upon information and belief' where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." Jefferson v. Collins, 905 F. Supp. 2d 269, 288-89 (D.D.C. 2012) (quoting Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) (internal citations omitted).

## ARGUMENT

In dismissing Plaintiff's first claim, the Court applied a heightened standard of review and did not give the deference to Plaintiff's allegations that is required at the motion to dismiss stage. Specifically, the Court did not "treat . . . as true" Plaintiff's allegations regarding the existence of a USDA policy to not enforce the AWA as to birds; nor did it construe these allegations in Plaintiff's favor, "even if doubtful in fact," "giving [it] the benefit of every reasonable inference."

Rather than accepting as true Plaintiff's allegations that the "[t]he USDA has consciously and expressly adopted a general policy of not enforcing the AWA with regard to birds," has "refus[ed] to apply the broad, general standards" to birds,  and "has categorically refused to

extend enforcement of the AWA to birds," Compl. (DE 1) ¶¶ 20, 21, 22 (emphasis added), the

Court rejected these allegations on the ground the Plaintiff had not provided "proof" of the

alleged policy. Mem. Op. at 16-17. However, "[a] plaintiff is not required to prove her case at the

pleading stage; indeed, '[t]he pleading of evidence should be avoided.'" <u>Woodford v. Cmty</u>

<u>Action Agency</u>, 239 F.3d 517, 526 (2d Cir. 2001) (quoting 2A Moore's Federal Practice ¶ 8.13,

at 8–68 (2d ed.1989)); <u>see also</u> <u>Dixon v. Midland Mortg. Co.</u>, 719 F. Supp. 2d 53, 57 (D.D.C.

2010) ("On a motion to dismiss, a plaintiff is not required to prove each element of her claim.

Instead, she is merely required to plead facts that, if proven, would establish the elements of her

claim."); <u>Ware v. Nicklin Associates, Inc.</u>, 580 F. Supp. 2d 158, 162 (D.D.C. 2008) (Under Rule

12(b)(6), "a plaintiff need not allege specific details that prove the veracity of a claim . . . .");

<u>Ass'n of Am. Med. Coll. v.  Princeton Review</u>, 332 F. Supp. 2d 11, 17 (D.D.C. 2004) (A

plaintiff "is not required to prove its claim in the complaint. The Federal Rules of Civil

Procedure do not require a claimant to set out in detail the facts upon which she bases her claim."

(citing <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (2004))).

    Nor is there a requirement, at any stage, that a plaintiff challenging a general non-

enforcement policy show that the policy has been reduced to a "concrete," "formally expressed .

. . official pronouncement," Mem. Op. at 15. <u>See</u> <u>Adams v. Richardson</u>, 480 F.2d 1159, 1164

(D.C. Cir. 1973) (en banc) (per curiam) (affirming judgment for plaintiff in challenge to a non-

enforcement policy where the evidence of said policy was the fact that the agency "ha[d] neither

instituted any enforcement proceedings itself nor referred any of the cases to the Department of

Justice").

I.      **The Existence of a Policy Is a Factual Allegation Entitled to a Presumption of Veracity, and Not a Legal Conclusion**

While it is true that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," Iqbal, 556 U.S. at 678, Plaintiff's allegations regarding the existence of a policy are "purely factual," as the courts have found in a variety of contexts. Midwestern Gas Transmission Co. v. FERC, 589 F.2d 603, 618 (D.C. Cir. 1978) ("The issue now facing the Court is whether such a Canadian policy exists a purely factual question."); see e.g., City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 731 (1999) (Scalia, J., concurring in part and concurring in the judgment) ("[I]n cases asserting municipal liability for harm caused by unconstitutional policies, judges determine whether the alleged policies were unconstitutional, while juries find whether the policies in fact existed . . . ." (citation omitted)); Bernhardt v. Los Angeles County, 339 F.3d 920, 927 (9th Cir. 2003) (the question of "the existence" of a  "policy" is "a factual one"); Andresen v. Int'l Paper Co., No. 13-2079, 2013 WL 4013120, at *4 (C.D. Cal. Aug. 5, 2013) ("It is sufficient to allege the existence of these policies at this stage, as plaintiffs have done, before further factual development in discovery."); In re Polyurethane Foam Antitrust Lit., 799 F. Supp. 2d 777, 794 (N.D. Ohio 2011) ("The allegation that a 'no communications' policy existed is clearly a factual allegation, which turns on whether company policy proscribed conversations with competitors and, if so, whether such conversations occurred."); Pleasants v. Allbaugh, 185 F. Supp. 2d 69, 76 (D.D.C. 2002) ("Whether a policy of discrimination exists is a question of fact . . . .").

As the Fourth Circuit explained in the context of a motion to dismiss a § 1983 claim, a plaintiff is not required to

> plead the multiple incidents of constitutional violations that may be necessary at later stages to establish the existence of an official policy or custom and causation. . . . . The complaint alleges the existence of several municipal policies or customs. . . . These

> allegations are sufficient to provide the County defendants notice of the nature of the claim against them . . . . If, as the district court believed, the . . . claim against the County defendants . . . is genuinely without merit, then it will no doubt fail either at the summary judgment stage or at trial, where the required showings are appreciably more demanding.

Jordan by Jordan v. Jackson, 15 F.3d 333, 339-40 (4th Cir. 1994).

Thus, at the motion to dismiss stage, "[t]he court cannot weigh the evidence to decide whether the policy in fact exists." Haase v. Sessions, 835 F.2d 902, 910 (D.C. Cir. 1987); see Graham v. Adams, 640 F. Supp. 535, 539 (D.D.C. 1986) (denying motion to dismiss, despite the fact that "the plaintiffs ha[d] proffered no evidence, by way of affidavits or exhibits," "[g]iven the inclusion . . . of the term 'policies and practices' in . . . the Complaint" and given that, "in the context of a motion to dismiss under Rule 12(b)(6), the Court must evaluate the allegations of the complaint in the light most favorable to the plaintiffs"). Instead, the Court should assume the existence of the policy.

## II.      Proof of the Alleged Policy Is Not Required at the Motion to Dismiss Stage, Before Discovery, but Only Later in the Litigation

That the Court erroneously applied a heightened standard to Plaintiff's allegations regarding the USDA's enforcement policy is underscored by an examination of the cases relied upon by the Court in suggesting that Plaintiff was required, at this juncture, to "identify a[] concrete statement from USDA announcing a general policy not to regulate birds under the AWA" and to demonstrate that the policy alleged has been "formally expressed . . . through some kind of official pronouncement." Mem. Op. at 15.

While these cases may have involved policies that were more clear than PETA has been able to (or is required to) show thus far, without the advantage of discovery and the administrative record, they are readily distinguishable. Two of these four cases involved straightforward facial challenges to policies that had been published in the Federal Register and

thus where, unlike here, further factual development was unnecessary. See Edison Elec. Instit. v.

EPA, 996 F.2d 326, 330-31 (D.C. Cir. 1993); Nat'l Wildlife Fed'n v. EPA, 980 F.2d 765, 767,

773 (D.C. Cir. 1992).

  The other two cases that the Court relied upon in concluding that Plaintiff was required to

point to a concrete, formal, official statement by the USDA were both resolved at the summary

judgment stage, not the motion to dismiss stage. See OSG Bulk Ships, Inc. v. United States, 132

F.3d 808 (D.C. Cir. 1998); Ctr. for Auto Safety, Inc. v. Nat'l Hwy. Traffic Safety Admin., 342 F.

Supp. 2d 1 (D.D.C. 2004); see also Crowley Caribbean Transport, Inc. v. Peña, 37 F.3d 671

(D.C. Cir. 1994) (finding enforcement decision non-reviewable at summary judgment stage).

Both cases, moreover, involved policy statements articulated in letters to regulated entities. See

OSG Bulk Ships, 132 F.3d 808; Ctr for Auto Safety, 342 F. Supp.2d 1; see also Mem. Op. at 15-

16 (noting same). Letters to regulated entities are precisely the type of documentation PETA

does not have access to but could obtain through discovery and the administrative record, which

is yet another reason that resolving the claim at this early juncture was in error. See Jefferson v.

Collins, 905 F. Supp. 2d 269, 288-89 (D.D.C. 2012) ("To be sure, '[t]he Twombly plausibility

standard . . . does not prevent a plaintiff from "pleading facts alleged upon information and

belief" where the facts are peculiarly within the possession and control of the defendant, or

where the belief is based on factual information that makes the inference of culpability

plausible.'" (quoting Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) (internal

citations omitted)); Graham, 640 F.Supp. at 538 ("[I]n the context of a motion to dismiss and in

consideration of the lack of an administrative record in this case, . . . the Court must construe the

contentions of the plaintiffs with respect to the notice issue in the light most favorable to the

plaintiffs. Accordingly, partial dismissal is not warranted because of the plaintiffs' alleged failure to articulate their continuing violation theory in their respective EEOC complaints.").

Without the benefit of the administrative record and discovery, it is not possible at this juncture to know that "there is by definition almost nothing for the Court to review." Mem. Op. at 17. The Court is not forced, at this stage of the litigation, to "'teas[e] meaning out of agencies' side comments, form letters, litigation documents, and informal comments.'" Id. (quoting Crowley, 37 F.2d at 677).[2] Rather, on a motion to dismiss, the Court is required to credit Plaintiff's allegations regarding the USDA's non-enforcement policy. Indeed, in Adams, the D.C. Circuit decision reviewing a challenge to a nonenforcement policy that the Supreme Court distinguished in Heckler v. Chaney, 470 U.S. 821, 833 n.4 (1985), the district court had denied defendants' earlier motion to dismiss precisely "to allow plaintiffs to engage in and complete discovery"—including "a very lengthy deposition" of the Department of Health, Education, and Welfare's Director of the Office for Civil Rights. 351 F. Supp. at 637 ; see also Adams v. Richardson, 480 F.2d at 1161 (noting that cross motions for summary judgment were based "on an extensive record consisting of depositions and documentary evidence").

As the Court acknowledges in its Opinion, challenges to alleged non-enforcement policies have been allowed to proceed past the motion to dismiss stage without proof of concrete policy statements. See Mem. Op. at 16 (citing Roane v. Holder, 607 F. Supp. 2d 216 (D.D.C. 2009); Jones v. Office of the Comptroller; 983 F. Supp. 197 (D.D.C. 1997)). In Roane, the court denied defendants' motion to dismiss a challenge to an alleged enforcement policy where the complaint alleged only that the policy existed "on information and belief," without further allegations, see 607 F. Supp. 2d at 225-28; Am. Compl. ¶ 30, Roane v. Gonzales, (No. 1:05-cv-

---

[2] Nor is the Court sent "down the rabbit hole of reviewing the lawfulness of an agency policy that the agency insists does not even exist," Mem. Op. at 17, because the lawfulness of the policy is not at issue at this stage of the proceedings.

2337) (Ex. 1). And in <u>Jones,</u> the court denied defendants' motion to dismiss a challenge to an alleged "general failure to promote fair housing" without reference to any policy statements whatsoever. 983 F. Supp. at 201, 203-04.

Indeed, even at the summary judgment stage courts have not, for good reason, conditioned reviewability on the existence of a "concrete statement." Thus, in <u>Adams</u> the en banc court found reviewable at the summary judgment stage a non-enforcement policy without any showing that the policy had been expressly articulated anywhere, let alone formally. <u>See</u> 480 F.2d at 1164 (referencing no written policy but, rather, the fact that the agency "has neither instituted any enforcement proceedings itself nor referred any of the cases to the Department of Justice"); <u>see also</u> <u>Heckler</u>, 470 U.S. at 833 n.4 (describing the situation in <u>Adams</u> as one "where it <u>could justifiably be found</u> that the agency has 'consciously and expressly adopted a general policy' that is so extreme as to amount to an abdication of its statutory responsibilities" (quoting <u>Adams</u>, 480 F.2d at 1162) (emphasis added))); <u>id.</u> at 839 (Brennan, J., concurring) ("[T]he Court properly does not decide today that nonenforcement decisions are unreviewable in cases where . . . an agency engages in <u>a pattern of nonenforcement</u> of clear statutory language, as in <u>Adams v. Richardson</u>." (emphasis added)).

To hold otherwise and to limit judicial review of general enforcement policies to only those policies that an agency had decided to reduce to a formal, official, concrete statement would be to give agencies Carte blanch to adopt and engage in non-enforcement policies so extreme as to amount to abdication of their statutory responsibilities and to avoid judicial review simply by not expressly formalizing the policies. This is not and cannot be the law. As the Supreme Court explained in <u>Heckler</u>, in establishing the presumption that an agency's decision not to take a particular enforcement action is unreviewable in the Administrative Procedure Act,

"Congress did not set agencies free to disregard legislative direction in the statutory scheme that the agency administers." 470 U.S. at 833.

### III.    The Court Improperly Credited Defendants' Assertions Regarding Its Policies

Because Plaintiff's allegation of a policy of non-enforcement is a factual allegation entitled to an assumption of veracity, see supra p. 7-9, the Court erred in crediting, at this stage, Defendants' assertions contesting the existence of such a policy. See Mem. Op. at 17; Navab-Safavi v. Glassman, 637 F.3d 311, 318 (D.C. Cir. 2011) ("Neither the district court nor this court has evidence in the record that appellee's conduct interfered with the performance of the governmental function, including the carrying out of the statutory mandates. We have only allegations, and the allegations of the parties are in conflict. At summary judgment or at trial, these conflicts may be resolved on an evidentiary record. At the stage of the motion to dismiss, they cannot. We must take the allegations in the light most favorable to the plaintiff." (emphasis added)); Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) (reversing district court's order granting defendants' motion to dismiss where the district court had "assumed the existence of facts that favor defendants based on evidence outside plaintiffs' pleadings, took judicial notice of the truth of disputed factual matters, and did not construe plaintiffs' allegations in the light most favorable to plaintiffs"). Further, although Defendants' contentions are not properly taken into account at the motion to dismiss stage, it is notable that, despite their assertions, Defendants have not pointed to a single instance over the past decade in which the AWA was actually applied to birds. Instead, they point to a handful of examples where inspectors have "discussed the care of birds" with exhibitors, while making clear that this does not by any means constitute enforcement of the AWA. Supp. Briscoe Decl. ¶ 5 (Nov. 5, 2013) ("Without a framework of

standards in place for birds, our inspectors are limited in what official directives they can provide

. . . .").

**IV.    If the Court Nevertheless Concludes That More Detailed Allegations
        Are Required, Plaintiff Respectfully Requests Leave to Amend**

If, despite the foregoing, the Court concludes that Plaintiff's allegations regarding the

USDA's policy of non-enforcement are not sufficient to survive a motion to dismiss its first

claim and that reconsideration is not warranted, Plaintiff respectfully requests leave to amend

pursuant to Fed. R. Civ. P. 15(a) Leave to amend would afford Plaintiff the opportunity to

elaborate on its allegations regarding the USDA's policy of nonenforcement to add reference to,

for example, an updated Inspection Guide that the USDA announced on December 2, 2013, see

E-mail from APHIS Animal Care to Teresa Marshall, Coordinator, Captive Animal Law

Enforcement, PETA Foundation (Dec. 2, 2013 2:46 EST) (Ex. 2), after briefing on Defendants'

Motion to Dismiss had concluded, which includes a self-titled "Policy" stating unequivocally

that, under the AWA, one "[n]ever need[s] a license" for birds. USDA, APHIS, Animal Care,

Animal Welfare Inspection Guide (2013), available at

http://www.aphis.usda.gov/animal_welfare/downloads/Inspection%20Guide%20-

%20November%202013.pdf (Ex. 3) (emphasis added); see also Mem. Op. at 14-15 (noting that

PETA has, in its briefing, "cite[d] to a slew of incidents where USDA officials repeatedly

responded to complaints about avian abuse claiming that birds 'do not fall under USDA

regulation' or were 'not under [USDA] jurisdiction'"; Pl's Opp'n to Defs' Mot. to Dismiss (DE

10) at 8-9 (describing and attaching, inter alia a response to a Freedom of Information Act

request "for 'records related to any inspection with noncompliant items involving birds'" that

stated that the agency had no responsive records whatsoever (emphasis added)).

Rule 15(a)(2) provides that "[t]he court should freely give leave when justice so requires." "Although the grant or denial of leave to amend is committed to a district court's discretion, it is an abuse of discretion to deny leave to amend unless there is sufficient reason, such as 'undue delay, bad faith or dilatory motive ... repeated failure to cure deficiencies by [previous] amendments ... [or] futility of amendment.'" Firestone, 76 F.3d at 1208 (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

## CONCLUSION

Plaintiff has adequately alleged a policy of non-enforcement by the USDA, and the USDA's denial of such a policy is irrelevant at this early stage of the proceeding. For the foregoing reasons, Plaintiff respectfully urges that the Court reconsider its dismissal of Plaintiff's first claim and permit that claim to go forward.[3] In the alternative, Plaintiff respectfully requests leave to amend its complaint.

Respectfully submitted,

/s/ Delcianna Winders
Delcianna Winders (D.C. Bar No. 488056)
PETA Foundation
1536 16th Street, N.W.,
Washington, DC 20036
202-309-4697
delciannaw@petaf.org

Jeffrey S. Kerr (D.C. Bar No. 420323)
PETA Foundation
1536 16th Street, N.W.
Washington, DC 20036
202-540-2171

---

[3] As set forth in Plaintiff's prior briefing, summary judgment at this juncture would also be premature because Plaintiff has not yet had an opportunity for discovery or to obtain pertinent administrative records. See Pl's Mem. in Opp'n (DE 10) at 28-30; Pl's Rule 56(f) Decl. (DE 10-2); Pl's Resp. to Defs' Statement of Undisputed Material Facts (DE 10-1);  see also Fed. R. Civ. P. 56(d); Convertino v. U.S. Dept. of Justice, 684 F.3d 93, 99 (D.C. Cir. 2012) ("[S]ummary judgment is premature unless all parties have 'had a full opportunity to conduct discovery.'" (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986))).

{00148466}15

jeffk@petaf.org

Jared Goodman (D.C. Bar. No. 1011876)
PETA Foundation
1536 16th Street, N.W.,
Washington, DC 20036
202-540-2204
jaredg@petaf.org

Attorneys for Plaintiff

Dated: January 13, 2014

**Certificate of Service**

I hereby certify that on January 13, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of such to the following CM/ECF participants:

Héctor G. Bladuell
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, D.C. 20530
hector.bladuell@usdoj.gov

/s/ Delcianna Winders
Delcianna Winders (D.C. Bar No. 488056)
PETA Foundation
1536 16th Street, N.W.,
Washington, DC 20036
202-309-4697
delciannaw@petaf.org